Good morning, ladies and gentlemen. It's the time set for the arguments. We'll be hearing on Bach in the case of Rizzo v. Yovino. You may proceed. Good morning, your honors, and may it please the court. I'm Shai Dvoretsky with Jones Day. With the court's permission, I'd like to reserve eight minutes for The Equal Pay Act provides an employer with an affirmative defense if a pay differential is based on any other factor other than sex. The any factor other than sex defense means what it says. Any factor is sufficient so long as it isn't sex or a pretext for sex. Here, prior pay, the basis for SOP 1440, is not sex and was not applied pretextually. For over 17 years, it was not applied as a cover for sex discrimination by my client. This was applied. That's the only thing that would count as being applied pretextually if it was your client alone. Yes, this is not a class action. This is an individual Equal Pay Act. Let's say that we had a situation, as in Corning, right, where the, I mean, just imagine that I'm starting a new company and I want to raid the workforce of the established monopolist. And they, as it turns out, have a work workforce that's sort of set up like Corning, where men and women are doing the same job, but they have a completely segregated pay scale, right? If I go in and I raid, let's say, 100 of their employees, and I just say, hey, everyone's getting a 20% raise. Come work for me. And I'm going to base your starting salary on the salary you had before, right? And it turns out that that pay scale at the prior employer was completely discriminatory. I assume I can't just rely on starting pay alone, can I? Or do you say that, yes, you can. If Judge Watford, if I'm understanding your hypothetical correctly, the new employer was discriminating in its pay scale. And in that situation, which is very different from our case, I think in that situation, the employer would have a much harder time showing that the policy of using prior pay was applied neutrally. There would be a much, there would be much stronger evidence there that, in fact, while the employer said that it was applying this as a general policy of using prior pay, in fact, the motive was discrimination. And the facts of Corning are instructive there, because in Corning, what the Supreme Court recognized, and this is a 205 of the opinion, is that the basis for the prior pay scale was that it was considered, quote, demeaning. That's a quote from the Supreme Court's opinion for men to work night shifts and therefore men on the basis of sex and on the basis of that stereotype had to be compensated. It was clear in that case that the employer itself had set up the prior segregation. Correct. There isn't even a second. So I'm trying to posit a situation where it's not the employer itself that's done that. It's some thing that your client didn't know. But once all the new employees got on board, you said, wow, turns out all the women are getting paid less than all the men. That seems odd. But, hey, I applied this gender neutral factor to determine starting pay. You would say in that scenario, even though it's clear that a disparity has resulted, that no liability? Two answers to that, Judge Watford. One is yes, because the EPA does not call disparities. It prohibits disparities, but provides a defense for any factor that's not based on sex. Second, I'd like to contrast that hypothetical with the fact of this case, where in fact SOP 1440 led to varying results at different times. It led to disparities both ways. For example, at the time that Ms. Rizzo was hired, another female employee was hired into the same mass consultant position at a step eight when Ms. Rizzo was a step one. And at the same time, a male was hired into that same position at step seven. And so just even at that one snapshot in time, this is a policy that didn't lead to the sorts of disparities across the board that your Honor's hypothetical is positing. It led to different results at different times and was applied neutrally. You think you want us to change our case law counsel? We've we've recognized that any doesn't mean any. And then if we were to construe it that way, as the Seventh Circuit does, the exception could follow the rule? And certainly the purpose of the act. So are you arguing for a change in our case law? I think I'm arguing for a tweak in your case law. A big tweak, right? No, because I think that what KUBA recognized, KUBA got a number of things right. It recognized that prior pay isn't sex. It recognized that the any factor... I don't recognize that it could or could not be. I'm sorry, Your Honor? It seemed to think, in a way that I don't well understand, that it could or could not be, depending on other circumstances. Right, and that's consistent with the rule that we're advocating as well. Prior pay could be... But KUBA did read the statute as not, as Judge Christian was saying, so that any other factor, not any, was any fact, differential based on any other factor other than sex, doesn't mean... It has to be read in context, and therefore has to be essentially job-related and workplace-related, in some sense. And as I understand it, you're arguing that's not true. KUBA did say that, Judge Berzon, and I think... Well, I think the later cases from this court, Stanley and Maxwell, make clear that what KUBA was really talking about was using the reasonableness requirement as a way to assess pretext. But this statute is not a disparate treatment statute, is it? It's not a statute about people's frames of mind and making decisions. Well, I think that when you look at the any factor other than sex defense, that is asking what was the basis for the disparity, which does actually get at intentional discrimination, because if it was based on sex, then the discrimination was intentional. They're very clear that intent isn't required, counsel, and with the overall mandate, wouldn't you agree the overall mandate is equal pay for equal work? And there are four affirmative defenses that amount to how to equate the work, right? The overall mandate is equal pay for equal work, so long as a... and to ensure that any disparities, the statute does contemplate that there may still be disparities, are not based on sex. With the based on sex language, that does get at the reason for the disparity, and the Supreme Court has made clear in several instances that this is not a disparate impact statute. In other words, the plaintiff's theory here is really that the use of prior pay is unlawful because it disparately impacts women, because of general labor market pay disparities. The Supreme Court in Gunfner, however, contrasted the EPA with Title VII which the Supreme Court had interpreted in Griggs to authorize disparate impact claims. In Smith v. City of Jackson, the Supreme Court contrasted the EPA with the reasonable factor other than age defense in the ADA, and the Supreme Court said in that case that under the EPA, the fact that Congress provided that employers could use only reasonable factors in defending a suit under the ADA is instructive when contrasted with the EPA, which allows any other factor quote, reasonable or unreasonable, end quote. That's the Supreme Court's characterization in Smith of the EPA factor other than sex defense. So what tweak is it that you're advocating? So I think that in Cuba, the court imposed on an employer the obligation to show that the practice was reasonable and used reasonably. In light of Smith, and in light of the language of the statute, I and Stanley, the question is whether prior pay is being used as a pretext for sex discrimination. And certainly one way that an employer might choose to show that prior pay is not being used pretextually is by showing that it's driven by reasonable business considerations and is used reasonably. What tweak are you asking for? The employer is not necessarily required in all circumstances to prove the reasonableness of the practice. What the employer is required to prove is that the practice is not pretextual. An employer may, however, choose to prove lack of pretext by showing the reasonableness of the practice. And in this case, in fact, consistent with Cuba, which has been the governing law of the circuit, FCOE has, in fact, put forward explanations for the reasonableness of the practice. I have a question about how this, something like this, would work out. Say you have two people that have the same qualifications, but their prior employment, one was from San Francisco and the other was from Lodi, California. And so the locality pay bumped the San Francisco person, even though the job was essentially the same. How would your rule work out so that this, so that you wouldn't, that you wouldn't have two similarly qualified people making different money? Well, I think you would have two similarly qualified people making different money, and the Equal Pay Act doesn't prohibit that disparity in your hypothetical, Judge Callahan, because clearly the locality difference would be a factor other than sex. And in fact, again, if you look at the facts of this case, Ms. Rizzo came from Arizona, which indisputably has a lower cost of living than Fresno. There is no evidence in this record, there's no allegation, that her prior pay was set in a discriminatory manner by her previous employer. In her deposition, she specifically said she didn't know that her prior pay had been set in a discriminatory manner by her previous employer. In all likelihood, the reason for her, the difference between her prior pay and her current pay, is in fact consistent with Your Honor's hypothetical locality differences, differences in cost of living. But then they're all living in the same place right then, so how would that person ever catch up? If the employer didn't have a prior pay system, the employer would of course be free to equalize those salaries, but I think the key point is the Equal Pay Act, in Your Honor's hypothetical, doesn't require catching up. It doesn't require equal salaries, because locality differences, the fact that one person had a lower prior salary due to a lower cost of living, is a factor other than sex, just under the plain language of the Equal Pay Act. What about the fact that, here you have a statute that set up, as Courting Glass said, the affirmative obligation based on job evaluation criteria, and then it has exceptions, all of which are traditional job-related criteria, and you want us to read the fourth one, a differential based on any outside that system. In other words, there's a statutory interpretation canon that says that you look contextually at, in the list particularly, at the words and the company they keep, and the company that they're keeping are all criteria that deal with the particular job and the particular workplace, and you want us to read this catch-all as outside that system entirely. A couple of responses to that, Judge Berzon. One is that the particular catch-all is a broad one. It says a differential based on any other factor other than sex, and so the word any, I think, is very significant in that statute, and the Supreme Court, in surveying the legislative history of this statute, has recognized that Congress put in a broad general exclusion. That's the same legislative history language that this court quoted in KUBA. Second, in response to your particular question about context, again, the prior pay policy here is business-related. It is related to the job. Related in the sense that it's about saving money. It's a market-based, isn't it essentially the market-based theory that Corning Glassworks thought was not at the core, because it's about saving money, but it's not about, as Judge Callahan was saying, anything related to the job or the workplace or the particular situation of the person at the time they're working there. Judge Berzon, first it is about more than saving money. It is about a judicious use of taxpayer dollars, but it's also about having an objective system and about attracting people to accept their offers from this employer. In response to the Corning Glass point, as I was explaining to Judge Watford, the take into account the market for a particular job. What was critical in Corning Glass was that there was a record showing that the reason for the disparity there was that women were paid less because they were women. Because of a stereotype that led men to think it was beneath them to do a certain kind of work, and therefore that required the employer to pay more for that kind of work. There is no such evidence in this case. There's no such evidence in Arizona, which is where Ms. Rizzo came from. There is no such evidence in terms of any evidence by her that her prior pay was set in a discriminatory manner. There's no such evidence in the studies relied on by the plaintiff and her amici, which show a macro level disparity in pay, but don't purport to show that the cause of that pay is narrowed down to discrimination. Certainly not in the relevant geographic market and not in the relevant job markets. I'd like to follow up on Judge Berzon's question. Yes. The Houston Generous point, that is to say if you've got three factors and then there's a fourth factor, it should somehow resemble or come out of the same set of categories. Your paraphrase left out a word. When you say any factor other than sex, the statute says any other factor other than sex, suggesting that the prior things on the list are actually helped to interpret what they mean by the fourth. But a purpose of the statute is to correct pay imbalances in the market based on gender. And it seems to me counterintuitive and even contrary, almost obviously contrary, to the function of the statute if you are to allow the feedback into pay setting the very set of pay differentials that the statute is designed to correct. Your Honor, I think you correctly said that the statute is designed to root out pay disparities that are based on gender. With the understanding that this is built into the salary structures at the time the statute is passed and it's designed to correct them and then to feed into the statute the very salary structures that the statute is designed to correct as a permissible factor, it doesn't make sense. Judge Fletcher, where I think I would disagree with the premise of your question is that at this point, FCOE is feeding in the very same salary structures that Congress was targeting in 1963. In 1963, you think they've been entirely corrected? I don't know whether they've been entirely corrected. Except the best indication we have is that in the 50 years that we've got, 50 years on, we've closed about a third of the pay gap, right? That's what we've got in this record. That's exactly what Congress was worried about. That's what the Equal Pay Act is. It's really a very modest objective. Equal pay for equal work, right? Counsel, let me ask you, do you think, I mean just for that one question, was Ms. Rizl getting equal pay for equal work? She was not getting the same pay as other men and other women doing the same work because of the neutral application of this prior pay policy. So both men... How is it a neutral application? I think going back to Judge Fletcher's question, which I think I probably interrupted, forgive me, but we had congressional findings. This is precisely the problem that we're worried about. And so to get back to Judge Fletcher's question, why isn't this what you call neutral, and we know from Congress and from Corning, we should be aware of neutrality in this case, and that's exactly what Congress is trying to root out. Because we don't know that the prior pay that's at issue in this case was discriminatory. But that's not the question. The question is whether we should interpret the statute, given Congress's understanding at the time, as building in this kind of an exception, or instead, through the application of ordinary rules of And I think that the interpretation that we are advocating is consistent with what Congress intended and consistent with what the statute would have meant in 1963. Both in 1963 and today, the question is whether the factor being used by the employer is something other than sex. Now in 1963, in the face of these findings by Congress of pervasive discrimination, and in the face of a specific record like the one that was at issue in Corning Glass, it would be exceedingly difficult, maybe impossible, for an employer to show that using prior pay was not, in fact, a pretext for sex. Because just about the congressional finding at that time was that just about every salary in the marketplace was one that was infected by gender discrimination. Whatever the state of the study that... If that's the case, that every salary is affected by discrimination, and the women's salaries at that time were lower because they were women, how can you base a salary of employment on that lower salary that's a result of gender discrimination? Isn't that simply perpetuating discrimination in violation of the clear purpose of the statute? No, Judge Reinhart. I think if you look at the studies today, the ones relied on by Plaintiff and Hiramiki... But you're telling us that the words meant one thing when the statute was passed, and without an amendment of the statute they mean something different because the world has changed? That's a very different method of interpretation of statutes than I'm accustomed to. No, Judge Fletcher. I'm saying that the words mean exactly the same thing, but the evidence that an employer might use in order to show a lack of pretext has in fact changed. And it's the other side's interpretation... But, Judge Reinhart, you're talking about a situation where Congress passed a statute that made it per se discrimination to rely on prejudicial pay rates at the time it was passed. It was pervasive, as you say. And therefore, one of the factors you can rely on is not the pervasive discrimination that existed at the time the statute was passed. Judge Reinhart, I think that, again, the statute means the same thing, and it's the other side's interpretation of the statute here that would make it change with time. Because it's under the other side's view that at some point there would be some new social science study that presumably employers need to monitor. But that's not true if one simply says this other factor other than sex, based on any other factor other than sex, simply can't be prior salary period, ever. Because it isn't the kind of factor that Congress had in mind. It doesn't resemble seniority, a merit system, or a system that measures earnings by quantity and quality of production, because that's to do with something that happened in a different workplace, not this one. Judge Berzon, if there were, in fact, a situation in which the entire pay gap were eradicated, if we were to hypothesize that, at that point, I think prior pay clearly would not be sex pay. That depends how you read any other factor other than sex, not based on sex in general, not if you read it as having to relate to the workplace and the job in some fashion. Even if it has to relate to the workplace and the job, though, the employer in this case has shown that it does. The employer has put forward justifications. The problem with the district court's opinion in this case is that, contrary to CUBA, it didn't even give the employer the opportunity to present those defenses. Can I ask you, it sounds like you're willing to concede that if prior pay is, in fact, infected with gender discrimination, that you can't then just rely solely on prior pay. It seems like you're willing to go that far, right? Well, what I would say is that if prior pay is infected by gender discrimination, that would be some evidence that the employer is only using prior pay as a pretext for discrimination. I don't agree with your use of the word pretext there, but let's just put that aside. You didn't get to finish your answer as to why you think the evidence that's in the record now, why doesn't it support the view that, in fact, the pay for math instructors or teachers of this sort in general is infected with gender discrimination? Why not? Some of the studies, like the Bureau of Labor Statistics study, don't purport to show causation at all. They simply show disparities. Other studies actually try to isolate the cause of the disparities, and some of the disparities are due to clearly nondiscriminatory factors, whether it's time out of the workplace, whether it's work-life balance choices made by different employees. There is no study that has definitively shown that any part of the current wage gap is, in fact, attributable to discrimination. We don't have any studies that basically hold equal all other factors, experience, skill, and the like, and say that, nonetheless, there's this remaining disparity that the only explanation seems to be gender? We don't have any studies that say that? Your Honor, I think that the closest the social scientists come is to isolate some small part of the wage gap that is unexplained, but the social scientists have not gone so far as to definitively show that that unexplained part of the wage gap is necessarily due to discrimination. Could you just clarify for me, how would you – in answer to one of these earlier questions, you said that we needed to tweak the framework in CUBA. I don't quite – are you advocating that we just maintain the CUBA framework? And that the evidence here supports what the panel opinion did? Are you asking for a particular change? If we're sitting on bunk, we could change the analysis. Judge Paez, let me give you two alternative positions. I think that the correct reading of the Equal Pay Act is that it permits a defense for any other factor other than sex. Prior pay can be such a factor. If the employer invokes prior pay as the reason for the disparity, the employer also needs to show that the use of prior pay is not a pretext for sex discrimination. One way that the employer might show that is by showing the reasonableness of the practice. But contrary to CUBA, it is not essential in all circumstances that the employer show the reasonableness of the practice. Second, and as a fallback, I do think that under the CUBA standard, if the court keeps the reasonableness requirement, the district court's judgment should be reversed because we can show, and in fact have put evidence in the record showing the reasonableness of this particular practice, and at a minimum ought to have an opportunity to present that evidence and to defend the practice in that light. Your Honor, is there – Yes, thank you, Your Honor. Thank you. Good morning. May it please the Court, my name is Dan Siegel. I represent Eileen Rizzo. I would submit that as Judge Fletcher pointed out, the purpose of this law was to remedy a longstanding problem in American society that Congress recognized when it passed the Equal Pay Act. And as the Supreme Court said in Corning, creating a prima facie case under the Equal Pay Act simply requires showing that an employer is paying women less money than men for work that requires the same skills and duties, and that that's what the law requires. And I gather that the way the law has evolved, that doesn't mean in the aggregate it means a woman and a man. In other words, is that right? You don't have to show averages or anything like that? You don't have to show averages. You have to show the effect of the policy to demonstrate that there's a violation of the Act. And I think the way I understand the Act is it doesn't require a plaintiff to show pretext. Pretext is a Title VII concept. Here the burden is on the employer who has been essentially shown to discriminate by paying women less money for work that requires equal skills and equal effort to justify that. What if an employer, sort of that geographical hypothetical that I gave previously, that if it was women, they looked for women and men from areas that got lower wages? Would that be a violation of the Equal Pay Act? Because they have lower salaries, and then if salary was a factor that they considered, then they can pay them less than people that come from, say, San Francisco or Seattle. But what if they're doing it for men and women? There's a clear business motivation there, and I think that was the gist of can they have that business model and not be in violation of the Equal Pay Act? I believe that the court in Glenn accurately summarized the justifications for unequal pay and pointed out that under the fourth defense, which is what we're talking about, that something akin to what exists in the first three defenses, merit pay, piecework pay, seniority pay, which involves a system of differentiating among individuals, is the kind of analysis which has to be applied to the fourth exception. And the courts have been, in my view, almost uniform in rejecting the market forces analysis as a justification. So, Judge Callahan, I think in your example that the idea that you would hire people from lower income areas or lower standard of income and living areas and pay them less is a pretty clear act of reliance on market forces, and therefore would not be consistent with what the courts have recognized as the fourth defense to an EPA violation. How does your position differ from the EEOC's position about how prior pay can be used? I don't believe it does. I think the EEOC and we have looked at the cases, have looked at cases, for example, such as Irby, which rejects the idea that prior salary alone can be a basis for unequal pay, but says you can look at prior salary if you have an individualized situation, right, where you're hiring someone to be an investigator for the sheriff's department, and the man who applies for the job, or in this case two men, showed that they had substantially greater experience than the woman who applied for the sheriff's department. I mean, what that means is you can look at it as a proxy, and at that point you're not really looking at salary, you're looking at their experience. It seems to me that it's very – I don't understand a theory that would say that prior salary and other things are okay, but just prior salary alone isn't. That's not what you're saying. I'm certainly not saying that. What you're saying is salary may be a way in which you learn of something else about the person, but you have to be relying on something else. You have to rely on something else. And I agree with you that in Irby the way it comes up is that the employer says to this employee who they're trying to hire because of the person's skills and experience, we'll match your prior salary if you come to work for us. And, you know, in a sense the due salary is only secondarily based upon the prior salary. It is primarily based upon the experience. One of the issues that we discussed coming here today is whether to advocate for a position that said that any reliance on prior salary would violate the Equal Pay Act, and that was kind of the inference that could be drawn from the panel decision. But then looking to cases like Anjovi or Angov and Irby where prior salary was part of a calculation that primarily relied on the individual's experience. You are backtracking. Well, yeah, I mean, we didn't make that argument in the petition, and we're not making it. Well, you didn't make the argument in the petition. That doesn't mean it's not the right argument that you should have made. And your reliance on Glenn suggests that that's your argument, because Glenn says the following, and I'm just on page whatever it is, 1571. Legislative history indicates that the factors other than sex exception applies when the disparity results from a unique characteristic of the same job, from an individual experience, training, or ability, from special education, service, or business. The pay disparity is not one of those factors. That's what Glenn says. Right, but at the same time. Are you arguing against the rule that would say that you can't hire people based on their past salary? I'm arguing against a rule which says that an employer can rely on prior salary alone. And are you saying that they can rely on prior salary as long as they have some of these other things that could be experience? They could say experience. They don't need to say prior salary. They could say all the things relating to job. What does prior salary have to do with the ability to perform the job? I don't think it has anything to do with the ability to perform the job, Judge Reinhart, and I wouldn't argue that. I would simply say that if you look at a case like Irby, where I believe Judge Berzon points out that that really wasn't the rationale, but that they paid the individual based upon his prior salary because they wanted to hire him.  Let's say you have somebody who works on a commission or a bunch of people who work on a commission. And the commission, how much commission they get, or say a bonus or a merit pay, all reflect something specific about them. They're very productive. They are valued by their employer and so on. It seems to me that you can rely on that, what the salary represents, but not the salary. You don't just translate the salary into another salary. But you can say, well, this person obviously was very productive, so I'm going to give them more money because they're productive, but not necessarily the same amount of money, just money based on productivity. It seems to me that that recognition of the connection brings you back to, but you have to go back to what the underlying, what it's a proxy for, not just translate the salary. Otherwise, I think you have a completely inconsistent position. Again, I agree with you. I mean, what happens is these cases arise in different ways, right, so that the plaintiff in Irby complained because the male received a higher salary that was, in fact, his prior salary. In theory, it could have been higher than his prior salary, but he received that increase, and that was found to be lawful because the court was convinced that the reason wasn't gender-based or a proxy for historic gender discrimination. But then you're also walking away from the notion that any other factor other than sex has a character. It's not about whether it is or isn't based on prior discrimination. It's about whether that factor is the kind of factor Congress meant to use, and that's a statutory interpretation question. It doesn't depend on shifting history. I agree. Well, you sort of do or you don't agree. I'm sorry if I'm not clear. I mean, I believe that I agree with you, and I'm trying to rationalize the cases which have a lot of- You don't have to rationalize the cases. You know, you're in the Ninth Circuit. We're trying to adopt a rule, the correct rule. Don't rationalize it with the Eleventh Circuit, the Fifth Circuit. If they're wrong, they're wrong. You tell us what the law should be because we are going to write an opinion that says what the law is, not what some other circuit has said. Now, when you have that in mind, will you tell us what your position is as to whether in hiring people, and we're talking about hiring people, the employer may rely on the past salary they have had, which we know has been set as a result of pervasive discrimination? I think the key word in your question, Judge Reinhart, is relied. In the cases where I can imagine that prior salary is considered, the new salary is not based on the old salary per se, but is justified by some additional rationalization. All right, fine. Is that additional factors like experience, education, whatever they are? I'm not asking you about that. Okay. I'm asking you, may they rely on pervasive past discrimination, which is the cause of the salaries that exist at the time Congress enacted the law? May they rely on the past salary? I think that's our case, and we say no because they have time. All right. Well, can I ask for your response to your opponent's assertion that, in fact, the evidence in the record before us does not show that the pay disparities that exist, let's say with respect to teachers generally or math instructors, that the data do not show that that's attributable to gender discrimination. What's your response to that argument? My response is twofold. First of all, that's contrary to what Congress decided when it passed the Equal Pay Act. It decided correctly, in my view, that there was a history of pay disparities that were based upon gender discrimination. Okay. Let's say that I don't agree with you on that. Just help me on an empirical level. What do the studies that we have in the record show us as to how much of the disparity is, in fact, attributable to gender discrimination or historic patterns of gender discrimination? The figures that we have cited from the Bureau of Labor Statistics, in our view, show the continuation of that past discrimination, that you could factor out years in the workforce. You could factor out whether people went to good schools or not so good schools. But in a very gross manner, in fact, including all of those differentiations among individuals and people in Arizona versus people in Fresno and so on, the bottom line, women in teaching make about $1,000 less than men in teaching. After you control for all the other factors? Is that what you're saying? After you build into your sample all of the other factors. What does that mean? It means that the BLS analysis is based upon taking all the women who are in the teaching profession and all the men in the teaching profession in each group with the differences among them, as your question implies, whether it's experience or education and so on, and without attempting to factor those considerations out, simply says, this group makes more money than that group, and that seems inconsistent with or allowing that to continue seems inconsistent with the purpose of the sample law. Irregardless of geography. Irregardless of geography. Is that what you're saying? Well, certainly those statistics meld individuals from every geographic area. And so, you know, absent some evidence that men and women are equally paid in Arizona, no one has even attempted to make that sort of argument. The assumption, and as Judge Seng said in his opinion, when you allow prior salary alone to determine who gets paid what, the idea that you're simply perpetuating societal discrimination stands out, and prior salary is, in fact, a proxy for gender bias. And contrary to what my opponent says, we don't have to show pretext. We don't have to show intent. This is not a Title VII case where there's been a response to a prima facie case where an employer has said, well, it wasn't because of sex. It was because of some other reason, and we have to show pretext, that is, an evil intent. We don't have to show that. We have a factor which is, in my mind, about the purest proxy possible for gender, prior salary. Can I ask, let me just tell you how I'm thinking about how the analysis would run, and then you tell me where I'm getting something wrong. Okay. It seems to me you've easily made out a prima facie case by showing the pay disparity that existed. The employer then comes forward and says, hey, basically, I have a non-gender discriminatory reason for why that disparity exists, namely that we're relying across the board. We apply it equally to men, to women. We're relying on prior pay alone. That seems to me, on its face at least, to fall within that fourth exception, right? It doesn't say anything about discriminating on the basis of sex, as long as it's applied across the board. So it seems to me if the record stood right there, you would lose. But I certainly think you have an opportunity at that point to say, well, no, although that factor looks on its face to be gender neutral, in fact it is just a reflection of underlying gender discrimination, right? And it seems to me that we have to have some basis for concluding that the prior pay in the particular industry sector that your client is involved in is, in fact, infected with gender discrimination in some fashion, right? So that's why I guess I was asking what the studies show, because your opponent says those studies don't show anything about the prior pay being infected by gender discrimination. They just show disparity in general. So I'm trying to get you to zero in on that. So it seems to me that you could simply ignore the fact that Congress passed the Equal Pay Act and that it passed it for the reasons that appear in the legislative history and that the Supreme Court relied upon in corning, and you could perhaps make that argument. But that's not where we are. We are in a world where Congress has spoken, the Supreme Court has spoken, and we have an ongoing statistical analysis. You didn't address Judge Watford's – you didn't say where Judge Watford's analysis is wrong. You disagreed with Judge Watford's analysis. I thought that Judge Watford said, in completing his analysis – In other words, if summary judgment – if the district court had not certified this case for appeal and you had to go to trial, how do you envision the trial and full name if you lay out Judge Watford's analytical framework? Well, I think it would be a very simple trial. We would simply show that Ms. Rizzo was being paid less for equal work. The defense presented by the court has been rejected by the – There would be no defense. There's no defense. No defense. Right. I'm sorry. We have time for your amici. Right. If you want one more question, fine, but we have two amicis who are going to argue. If you – I guess under the Seventh Circuit approach, it looks like you'd have a tougher time because the stated reason under the Seventh Circuit is an acceptable one to qualify for the exemption. Here, I mean, it seems like we're having to decide whether or not we should apply some other business reason to make sure there's no masking of discrimination or whether it shouldn't be the sole factor. Or I guess the other option of you can't consider it at all, which I'm not quite sure you were making that in your briefs. So if we applied the – you have to show some other business reason. It's not masking that discrimination. What would you point to in the record, or what argument would you make to prove your case? Okay. Again, we presented to the lower court studies which demonstrate the historic and current pay disparity. Those studies were not rebutted by the defendant in the record. So the record that is before you and was before Judge Singh is a record of an ongoing historic disparity with only the justifications that the Fresno County Office of Education put forward, which in one case are precisely market forces. We can pay women less because we can pay them less because they'll work for less. That was one of their justifications. Two were that it was objective and not subjective. And you could say the same about a rule that said no women need to apply because that's objective as well. So in your theory, therefore, if two years from now there was a new study done and there was no wage differential anymore, the case would come out otherwise? If we could no longer demonstrate that prior salary was a proxy for sex bias, I guess we'd be in another world and it probably wouldn't be two years from now. It might be 30 years from now. And perhaps at some point there will not be gender bias in the workplace. Thank you, counsel. We'll hear from him. Thank you. May it please the Court. Jessica Stender on behalf of Amici Curie, Equal Rights Advocates, and 50 other national organizations with expertise in gender discrimination and the gender wage gap. Because the reliance on prior salary is inherently based on gender, due to the pervasive wage gap that continues to this day, prior salary cannot justify a wage differential under the Equal Pay Act, and this Court should affirm the District Court's ruling. There's a pervasive wage gap in virtually every industry and occupation in this country. 2016 U.S. Census Bureau data show that women overall earn 80.5 cents to every dollar earned by men. And for women of color, this is even worse. Suppose there were some pockets in which this wasn't true. There was a, whatever this position was, if you went back and you could demonstrate there was no wage gap. Does the case come out differently then? I think if we ever reach the point of true gender paid purity. I mean, maybe nurses or doctors or I don't know what. Do you have to prove it up as just a particular subgroup that you're talking about? Yeah, I think you would have to prove that within that specific industry or occupation, if you could show no gender wage gap now and really kind of a generation before. And who proves it? Well, I think if the plaintiff has established her prima facie case to show she's being paid less than a man for equal work, then it's the employer's burden to prove the affirmative defense that this was based on some fact other than sex. So if the employer can show that there truly is no pay differential between women and men in that particular industry or occupation, then they would have satisfied their affirmative defense on that. Can I ask you? So it seems undisputed that there is, in fact, a differential, as you said, across many sectors of society. But do we need something more than that in terms of studies that actually control for all the other factors that might contribute to the disparity so that we can say that, in fact, the disparity that remains is attributable to gender alone? Or do you say, no, that doesn't matter, it's just it's enough if there's a correlation? Well, I think the studies that have been done most recently, the 2016 study, where they actually do control for factors such as education, age, occupation, race, unionization status, there's many factors that they've controlled for. There is still an unexplained differential of approximately 38%, and that is attributed by people who look at it as related to discrimination, given that there is no other explanation for it. And which study is that? Sorry? Which study is that? The Blau study that's cited in our amicus brief. May I ask you, if Congress passed a bill that said that you can look at three factors plus the fourth factor, which had to be similar to the other three, meaning job-related. And in that bill, because it said job-related, it meant not what your former pay was. And Congress said, you don't have to look at former pay, you can look at job experience, you can look at education, you can look at anything that is related to the job. But former pay is not related to your ability to perform the job. If Congress said that and eliminated that factor, because all the things that are legitimate that relate to former pay, such as your experience, your ability to do the job, all those things can be pointed to, but not the fact that there was former pay at a lower rate because it was pervasive discrimination. Then, what difference does it make at that point? Why former pay is used if it was prohibited by a statute that said the fourth category must be job-related like the first three? What more do you need, then, than to say that Congress prohibited looking at former pay because of the pervasive discrimination? Sure. If Congress had said that the factor other than sex has to be actually job-related, I would agree that prior salary would merely reflect some legitimate non-sex-based job-related qualifications. But when? The opposite. It doesn't have anything to do with your job. Well, if an employer is claiming that they're looking at prior salary because it's a means to kind of evaluate some kind of job-related qualification that this employee has. As a proxy. Sure. Looking at prior pay as a proxy for how they performed in an earlier job. Exactly. I think the point of the question that we're trying to get at is all of the factors that went into that prior job are allowed under the Equal Pay Act, as long as they're work-related. What's not allowed, and the way to strip out the history of gender discrimination, it seems to me, is to not allow and not perpetuate that element that is discrimination that factored in last time. Exactly. If there was a legitimate job-related qualification, such as additional experience or education or whatever job-related qualification the applicant had or the employee had, then the prior salary is irrelevant. They can base their legitimate defense on one of these true non-sex-based factors related to the job. If we adopt your rule, if we rule in your favor, don't we have to overrule CUBA, our own precedent? Isn't it internally inconsistent? I would say yes. Because prior salary is inherently sex-based, it can never justify a pay differential under the Equal Pay Act. To rely on it without any other factor to show that it truly reflected a job-related qualification to justify unequal pay for equal work. I disagree. I don't understand why you're saying to rely on it without any other factor. It seems to me to rely on it whether you water it down by considering other factors or not, it's either problematic or it's not. So we would never say that an employer can pay an employee less based upon his skin color, whether the employer looks at other factors or not. Clearly, we would not allow that, right? You're right. So why would this be any different? You're right, Your Honor. They cannot, under our position, they cannot rely on prior salary at all. They need to set forth a non-sex-based factor. And for the reason we talked about, the existence of a pervasive gender wage gap, prior salary is inherently sex-based. I'm having a little bit of problems because what I'm hearing people say is then when the judges tell them, well, are you really saying that? And after you already really said it, then you say, well, I'm really not saying that. I mean, I heard you first say that you can't solely rely on prior salary. But then when Judge Kristen or others have come back and said, well, can you rely on salary at all? And we'll say, well, not with other factors. But then when you realize that the position is they're saying don't say you can rely on it at all, then you retreat. And I've heard that. So I'm trying to decide what your position really is. I apologize for the confusion. Our position is an employer can never rely on prior salary to justify a pay differential under the Equal Pay Act. And therefore, COOPA is wrong? Yes. To the extent that it allows an employer to rely on it, yes. I think there's a difference between considering it, looking at it. But to the extent prior salary caused any portion of a wage differential, it is an unlawful factor that does not satisfy the affirmative defense. Then why can you even look at it? I'm hearing two different things going on here. Well, a lot of employers have suggested, and in this case, the specific case, that they use prior salary for a reason such as attracting an applicant. They know they'll get an automatic raise. If an employer wants to begin their salary analysis by saying, okay, the first step is we look at their prior salary and add 5%. That incentivizes them to come to us. Our position is you can look at it, think about it, but if that's going to bring a woman's pay below a man's for equal work, to be in compliance with the act, they're going to have to bring her pay up to be equal to his. So if they want to look at it, think about it, consider it, there's no prohibition on what they do in their analysis, but what they're actually setting pay on has to be on some legitimate non-sex-based factor. The prior salary cannot have caused the pay differential. Thank you, counsel.  Thank you. Good morning, Your Honors. Barbara Sloan for the EEOC. I'd like to start something different. I'd like to start by noting that Section 3 of the existing decision had some very important information that we hope doesn't get lost in the en banc. Section 3 talks about the burdens of proof and the standards of proof, and that's an issue that has caused great confusion among litigants and courts in this circuit and elsewhere. In Section 3 of the panel decision clarified that, and we think that was very helpful. So we hope that we urge the court to include something similar in this decision as a point of clarity. All right. Turning to the specific issues that have come up, as I see my time is very limited. We'll give you five minutes. Why don't you put five on the clock, and then we'll legalize it. Thank you. We agree with all the issues with respect to the plain language. The way that the defendant would interpret the statute would make the first three categories of surplusage because they would be included within the any other factor other than sex. Why put them in in the first place? And the canons of construction suggest that those three factors should inform the interpretation of any other factor, and that would mean they should be work-related. Congress itself said what those factors ought to be, but they were thinking about things like shift differentials and lifting or moving heavy objects or differences based on experience or ability. Those are all work-related. Does that mean that under your interpretation of the statute, you could not look at past pay because that is not a work-related factor? The EEOC has not, I'm going to say, not lawful. The EEOC has not taken that position. I know it hasn't taken the position, but I'm asking you whether that is not a logical result of your position. That is a logical result of that interpretation, yes. So it's your position that it can't be sole reliance? It can't cause a pay disparity, and that would be sole reliance, or if it's one of many factors, but it's the one that makes the difference. If it's not a proper factor to be considered under the statute, it doesn't matter whether it's sole or along with others. Well, I'm not sure that we would take the position that prior salaries... You haven't taken a position yet. Okay. But I'm asking you the logical question. If that's not a permissible position to take under the statute, then it wouldn't be permissible to take it as one of the two factors or one of three factors. I think that the Congress's intent obviously was to eliminate the pay gap, but I'm not sure that goes as far as to say that prior pay is a proxy for sex. Well, I'm just really struggling not only with the consistency of your position but also whether our own case law is going to be internally inconsistent, whether CUBA is going to be inconsistent if we rule in your favor. So could you really hone in on this? On CUBA? On how it is that we could rule that to rely on this factor, prior pay alone, is impermissible but it's okay to rely on if other factors are considered also. I am at a loss. I don't think I would use the word rely, Your Honor. I think consider was a better word. If prior salary is just one of a whole bundle of things that goes into a big mix and comes out, for example, I think of it like – How is it not permissible under Part 4 and under the statute? If it's not permissible under the statute, how can it be permissible if it's one of two factors but impermissible if it's one of one? I think that the statute doesn't limit an employer's needs, and if the employer thinks that prior salary correctly reflects the individual's ability, education. Then why shouldn't it be all right if it's all a factor, if that's the case? And if it's not the case, why should it be correct if it's one of two factors? Because if it causes the disparity, then it's going to continue to perpetuate the pay disparity. You're essentially saying that a dual motive kind of analysis, if you say it's because of his prior salary and because he's very well educated, but probing further, really the salary had nothing to do with it, then it isn't the salary. It just seems a very interesting position to say that it's okay to utter the words but they can't mean anything. That's essentially what you're saying. It can't make the difference, Your Honor. It can't be the cause of the disparity. But if the employer, for example, says I really need this person, I'm not going to be able to get them if I don't match their prior salary. And it's the cause. That's the reason. That's not based on prior say. It's because I need this person. It's directly based on prior salary. It's based on the fact that I really need this person and that's what I have to pay to get them. But if that's the way that's working, what you're saying is, I had to rely on the prior salary to pay a higher salary, which means you didn't make the prima facie case. That is to say the person has paid a lot of money. It's when the person isn't paid as much as her male contemporaries who are doing the same job. Well, you needed to pay her the higher salary to come in, but the truth is you needed to pay her the higher salary that matches the salary of her fellow employees. The one where you really need to pay the really high salary, that person's not coming in to sue. So your example doesn't actually address the real world situation. I'm sorry, Your Honor. I didn't understand what you were saying. Well, you're positing that it's a legitimate factor when the employer says, listen, you're being paid $100,000 and in order to attract you, I need to pay you $125,000. I get that. But if that person is coming in because you needed to pay $125,000 and behind your premise is, I'm paying you more than I would otherwise pay, that person is then going to be very well paid. But if the other people in the office are paid $150,000, well, I understand all you needed to do was pay $125,000, but if you're saying we're unable to attract really high-quality employees because we need to be able to pay above what we would ordinarily pay, that's not your example. You're right. The person who's getting paid $150,000 is not going to sue. I want to kind of understand your position because I feel like you're getting pushed and pulled a little bit on this. So going through your brief, I understood your position to be prior pay alone cannot justify a compensation disparity under the Equal Pay Act because the practice perpetuates the gender pay gap that continues to exist in the field of education as well as elsewhere. I understood that. And then I also understood the brief said, in our view, an employer asserting this defense must show that the factor is related to job requirements or otherwise is beneficial to an employer's business. Am I still stating your position? I took that right from your brief. Oh, dear, I forgot it. Okay, and then I took from your brief, an employer normally may consider prior salary as part of a mix of factors, as, for example, where the employer also considers education and experience and concludes that the employee's prior salary accurately reflects his or her ability based on job-related qualifications. That's our position. Because prior salaries of job candidates can reflect sex-based discrimination, however, prior salary cannot by itself justify a compensation disparity. Okay. So am I tracking what you think? I think that's correct. And then even in CUBA, your brief at 14, where prior salary was only one of several factors used in setting pay, this court required proof that the company use of prior salary was reasonable. And then you also say, unlike the burden-shifting proof scheme in a Title VII case, once an EPA plaintiff makes a prima facie case, the burden of persuasion shifts to the employer to prove that the wage disparity is permitted by one of the four statutory exceptions. Correct. Is that? Yes. So I don't see your position as being exactly the same as anyone else getting up here. But I'm not arguing with that. I just want to understand your position. I think that may be accurate, Your Honor. Is that the position of the EEOC, that it's taken in a formal action? Or is that your position here in the midst of litigation? Well, our compliance manual says that prior salary alone is never sufficient. It can't cause the disparity. Yes. And it doesn't go beyond that and say, but you may use prior salary as one of two factors. I think it is consistent with that, yes, Your Honor. I think that is our position. You think it is? Yes, in the compliance manual. I can't quote you. The hypothetical that I had before about if an employer decided, okay, for business reasons we want to pay people less, so we're going to recruit people from areas where they're making less. And we're going to recruit men and women, and they hire men and women from areas like Texas, Arizona, or Lodi, like I said, or whatever. And so if the salary is, if the evidence shows that they're just trying as a business model to pay people less and they're doing it for both men and women, is that a violation of the Equal Pay Act? Well, I think you put your finger on it, Your Honor, earlier when you said how would that ever get caught up. That's the problem. I think prior salary, once you consider it, you end up in a box where you can never. But if the men and women were both getting paid less, it wasn't a question of gender there. They just, they were recruiting people from areas that were making less money because they wanted, and then they gave them all 5%. And then they were. But then I'm not, so there's not a disparity between the men and the women after that. They're just. And there's no Equal Pay Act problem. Okay. I just wanted to understand that. But then if there was an Equal Pay Act between the men and the women after that, then the sole, you can't solely rely on their prior pay. You have to look at other factors. Prior pay can't cause the disparity. Yes. Thank you, Counsel. We'll give you a little extra time if you need it. Thank you. If I could just pick up on the exchange that Judge Callahan was just having with Ms. Sloan. Our situation is precisely the one that Judge Callahan posited, where there is a prior pay policy that leads to some men being paid more than women, and it leads to some women being paid more than men. That demonstrates that the use of prior pay in this case is not sex-based. It is a factor other than sex. The way to determine that, as I think Judge Watford was positing to Mr. Siegel, is the question is whether prior pay is being used as a proxy for sex. If it is, then the pay differential at issue is one based on sex, and the fourth exception in the statute doesn't apply. You've gone beyond the first question. The first question is does the Act prohibit considering prior pay? Does the Act, when it has a catch-all clause, does that clause relate only to job performance qualities or elements relating to job performance, like the first three elements, when it says other factors other than sex? Does that mean that the last clause should be construed, along with the prior clauses, to limit this bill to work-related factors? And if it does, then prior salary can't be considered at all. Now, things that go into making up a prior salary, education, experience, all those things, there's no reason to talk about prior salary if you talk about the things that lead to prior salary, if the Act prohibits it. Now, that's the first question that has to be answered, what the meaning of that final catch-all clause is. Is it, as the legislative history suggests, and as the purpose of the statute suggests, is it only elements related to the performance of the job? If you answer, no, it's not, then you get to the questions we're talking about. If you answer, yes, it is, then you can't look at the prior salary at all. You can look at the things that lead to the salary, but not to the salary itself. Judge Reinhart, let me try to unpack that question because I think there are a number of points in there. The purpose of the statute is to root out discriminatory pay, not just wage inequality, but wage inequality that is due to sex. That is why the statute is written the way it does. The legislative history confirms that this is... Can I just ask a question? When you say, it could be due to sex, but not in the mind of the employer. The employer can say, well, I'm not out here to discriminate. But this isn't a disparate treatment statute. So when it says, for example, a differential based on any other factor other than sex, you're reading that as if it says because of. But it could be based on sex, even though, because objectively speaking, it's a sex-related factor, even though in the mind of the employer, it's not. That's not its purpose. And you seem to be reading it as requiring a discriminatory motive. That factor, that sub-factor. And the reason that I am reading it that way is that the Supreme Court has said that this is not a disparate impact statute. So if you have a factor that on its face is neutral, but reliance on it hypothetically has a disparate impact on a protected class, that's actionable in certain ways under Title VII or the ADA. But affirmative defense. In other words, to say it's not a disparate impact statute means that you have to make out your case in a different way, which she did. But now you have an affirmative defense. And the question is whether that affirmative defense requires disproving a bad motive by the employer, which is what you're assuming. Well, I think what the affirmative defense requires is for the employer to show that it based its decision on something other than sex. Now... May I ask you a procedural question? Yes, Judge McHenry. If the embanked court were to adopt the district court's legal determination, which I'll shorthand to say that prior salary alone can never be a factor other than sex, were that to be the reading of the embanked court, this came up, of course, on summary judgment here on interlocutory appeal, where would that leave you procedurally in terms of having a case or your case being over? So I think that would still leave the Title VII and the Conflict of State Law claims. I should have said more precisely, where would that leave you on your Equal Pay Act case? So I don't believe that the plaintiff has actually... These were not cross motions for summary judgment. This was our motion for summary judgment. And so we would have to, at that point, I think, work out with the district court what remains to be tried. But we'd be going to trial with a prima facie case having been established and none of the defense is applicable. Well, that's my question. Would you have any defense? Would you have any statutory defense at that point? I don't believe so. Thank you. Why don't you finish answering Judge Reinhardt's question? You were unpacking it. Do you want to continue unpacking it? Sure. So I was unpacking it at a few levels. One is, I was arguing what I think the premise of the statute, which is to root out discrimination. Second, the legislative history is written broadly. Third, job-related, even if you read that into the statute, job-related can also be understood to mean business-related. And in this case, the employer has offered several reasons why this policy is, in fact, business-related and is not discriminatory. I think that a key passage of the Corning case is instructive here. This is at 204 of Corning. What the Supreme Court there was asking was whether a wage disparity was, in fact, intended to serve as compensation for night work or rather constituted an added payment based upon sex. And so in that case, once the employer came forward and said, here is the non-sex-based factor for the disparity, the court took a close look and said, well, but is it really based on sex? Is that what you're doing? Or is what you're doing a business-related reason? You know, I think we're dealing with a simpler question here. Maybe this will help unpack. We're dealing with an initial hiring. The problems with initial hiring are different from the kinds of problems that arise once you have an employee who's moving to another job, who's being promoted. Those are different things. Here, when you have an initial hiring, can you hire somebody at a lower rate because she's been paid at a lower rate all along? And that's where the statute of purpose comes in. Women have pervasively been hired at a lower rate because that's how they had to get jobs. So to look at that pervasive lower rate, is that a legitimate factor to look at when you're hiring someone initially? That's the question, and I think you'll find things in Corning, and I don't want to take your time with it, that say that that's totally contrary to the purpose of the act to eliminate that pervasive result. And, Your Honor, I would just point you to how I read the statutory language, which is Congress created this defense for any factor other than sex, and therefore the question becomes, is the particular practice employed by the employer a factor other than sex? I realize I'm over my time. If I may just add one other point. In response to Judge Watford's earlier question about the state of the record, the only study that the plaintiff actually submitted in the summary judgment proceedings below was the Bureau of Labor Statistics data. That does not even purport to show causation. It simply shows a disparity. It doesn't show any disparities specific to Ms. Rizzo's employment, to teachers in Arizona, to her position, or to teachers in California. There are, of course, all sorts of competing social science studies. Ms. Stender mentioned some of them. The Center for Workplace Compliance brief contains some other competing studies. Ultimately, it's Congress's job or the job of state legislatures to assess those studies and determine whether they wish to amend the statute in the case of Congress or to add additional provisions in the case of state law. But the statute that Congress actually enacted here refers on its face to any other factor other than sex, and the employer here qualifies for that defense. Thank you, counsel. Thank you both. Thank all of you for your arguments. The case should now be submitted for decision and will be in recess. Thank you. Thank you.
judges: Reinhardt, Thomas, McKeown, W. Fletcher, Paez, Berzon, Tallman, Callahan, Murguia, Christen, Watford